USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/28/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,          :
                                   :    11 Cr. 576 (WHP)
        -against-                  :
                                   :    MEMORANDUM & ORDER
JOSHUA MEREGILDO, *et al.*,        :
                                   :
                    Defendants.    :
----------------------------------X

WILLIAM H. PAULEY III, District Judge:

Defendants Joshua Meregildo ("Meregildo") and Earl Pierce ("Pierce") move to suppress cell site and Global Positioning Satellite ("GPS") data seized pursuant to three search warrants and to compel the Government to provide a bill of particulars on Count Fifteen of the Twelfth Superseding Indictment. Meregildo also moves to suppress physical evidence seized pursuant to a search warrant. For the following reasons, Meregildo's and Pierce's motions are denied.

## BACKGROUND

Cellular telephones work by communicating with cellular networks consisting of numerous cell sites—a structure that typically includes transmitters, receivers, antennas, and other technology designed to interact with a cellular telephone. Each cell site operates at a particular location and covers a certain geographic range or cell. When a cellular telephone user places a call, sends a text message, or otherwise accesses a provider's network, his cell phone communicates with a cell site—often the one in closest proximity to the device. A more exact

location can be gleaned through the use of triangulation with multiple cell sites.[1] Because cell phone providers keep historical records of this information, cell site data serves as a valuable law enforcement tool and can help establish an individual's location at a specific time.

GPS systems are now standard on many cellular telephones. GPS data can be used, much like triangulated cell site data, to determine the exact location of a cellular telephone at a specific time. GPS data has become an important asset in law enforcement's arsenal and has also spawned considerable litigation. See United States v. Jones, 132 S. Ct. 945 (2012).

In this case, the Government sought and received various warrants authorizing it to obtain, inter alia, cell site and GPS data for cellular telephones belonging to Meregildo and Pierce. The Government also sought and received a search warrant for Meregildo's home located at 2235 Haviland Avenue in the Bronx.

## DISCUSSION

I. Fourth Amendment Searches

The Fourth Amendment provides in relevant part that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Probable cause is "a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Maryland v. Pringle, 540 U.S. 366, 370 (2003) (quoting Illinois v. Gates, 462 U.S. 213, 231 (1983)). The

---

[1] For a more detailed description of the mechanics and investigative uses of cell site information, see Judge Kaplan's discussion in In re Application of the U.S. for an Order for Prospective Cell Site Location Info. on a Certain Telephone, 460 F. Supp. 2d 448, 450-52 (S.D.N.Y. 2006).

standard is not subject to a rigid definition—instead, it is fluid and contextual and depends on the "totality of the circumstances." Pringle, 540 U.S. at 370-71. Probable cause exists for a warrant if "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238.

### A. Cell Site Warrants

Three cell site warrants are at issue here—the September 24, 2010 warrant to seize cell site and GPS data for Pierce's cell phone, and the October 8, 2010 and January 26, 2011 warrants seizing cell site and GPS data for Meregildo's cell phone. Meregildo and Pierce both claim that the Government failed to demonstrate probable cause when applying for the warrants.[2] In deciding whether to issue a warrant, the magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. The duty of a reviewing court is to ensure the magistrate judge had a "substantial basis for . . . conclud[ing] that probable cause existed." Gates, 462 U.S. at 238 (internal quotation omitted).

---

[2] The disclosure of historical and prospective cell site information is authorized by reading the Pen Register Statute and the Stored Communications Act together. See, e.g., United States v. Navas, 640 F. Supp. 2d. 256, 262 (S.D.N.Y. 2009) (overruled on other grounds); In re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone, 460 F. Supp. 2d 448 (S.D.N.Y. 2006). Under these statutes, the Government must demonstrate "specific and articulable facts" that there are "reasonable grounds to believe [that the sought-after data is] relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Because the Government's applications establish probable cause, they also satisfy the less rigid "specific and articulable facts" standard.

Preliminarily, this Court turns to Meregildo's argument that <u>Jones</u>, requires a probable cause showing prior to seizing cell site and GPS data. In <u>Jones</u>, the Supreme Court held that the installation of a GPS device used to track a private vehicle over a prolonged period constitutes a Fourth Amendment search. 132 S. Ct. at 949. One court of appeals has distinguished <u>Jones</u>. <u>See</u> <u>United States v. Skinner</u>, --- F.3d ----, 2012 WL 3289801, at *6 (6th Cir. Aug. 14, 2012) (finding that tracking a suspect using GPS technology previously imbedded in his cell phone was not a Fourth Amendment search). But lower federal courts have found that seizure of historical cell site data is a Fourth Amendment search. <u>See, e.g.</u>, <u>In re Application of the United States</u>, 809 F. Supp. 2d 113 (E.D.N.Y. 2011); <u>In re Application of the United States</u>, 747 F. Supp. 2d 827 (S.D. Tex. 2010). As discussed below, because the Government demonstrated probable cause, Meregildo's argument is moot.

This Court conducted an *in camera* review of the unredacted affirmations to determine what the witnesses knew, how they knew it, and whether the information provided a "substantial basis" that probable cause existed.[3] Based on that review, this Court finds as follows:

a. Detective Richard Hyde's ("Hyde") September 24 affirmation reveals that (i) Pierce operated a drug distribution business and arranged for the murder of Jason Correa, (ii) a registered informant with a sufficient basis of knowledge and a prior track record of providing reliable and accurate information to law enforcement was a source of Hyde's averments, and (iii) probable cause existed that seizure of the cell site and GPS data of Pierce's cellular telephone

---

[3] The Government submitted unredacted versions of the September 24, 2010 affirmation of Detective Richard Hyde and the October 8, 2010 and January 26, 2011 affirmations of Special Agent Castillo. These affirmations are filed under seal.

was likely to produce evidence of criminal activity. (Gov't Mem., *In Camera* Ex. A: Affirmation of Hyde, dated Sep. 24, 2010.)

    b. Similarly, Special Agent Janice Castillo's ("Castillo") October 8 affirmation shows that (i) Meregildo was involved in narcotics trafficking and participated in the homicide of Carrel Ogarro, (ii) a witness with a sufficient basis of knowledge was the source of Castillo's averments, and (iii) probable cause existed that seizure of the cell site and GPS data of Meregildo's cellular telephone was likely to produce evidence of criminal activity. (Gov't Mem., *In Camera* Ex. B: Affirmation of Castillo, dated Oct. 8, 2010.)

    c. Finally, Castillo's January 26 affirmation establishes that (i) Meregildo operated a drug distribution business and participated in the homicide of Carrel Ogarro, (ii) witnesses with sufficient bases of knowledge were the source of Castillo's averments, and (iii) probable cause existed that seizure of the cell site and GPS data of Meregildo's cellular telephone was likely to produce evidence of criminal activity. (Gov't Mem., *In Camera* Ex. C: Affirmation of Castillo, dated Jan. 26, 2011.)

    Accordingly, the cell site warrants were issued on probable cause, and Meregildo and Pierce's motions to suppress them are denied.

  B. <u>Search of 2235 Haviland Avenue</u>

    The Government also obtained a warrant to search 2235 Haviland Avenue, Bronx, New York (the "Haviland Warrant"). Meregildo claims that the Government failed to demonstrate probable cause when applying for the Haviland Warrant, that the authorized search was overbroad, and that the actual search exceeded the scope of the warrant.

1. Probable Cause

The Governments' application for the Haviland Warrant established probable cause that Meregildo was participating in various federal crimes—narcotics trafficking, bank robberies, firearm possession by a felon, and murder—and that evidence of those crimes likely would be found inside of 2235 Haviland Avenue.

The Government provided the issuing magistrate judge with cooperating witness's statements and information discovered through public records establishing that Meregildo resided at 2235 Haviland Avenue, Bronx, New York. (See Meregildo's Mem., Ex. C: Affidavit of Janice Castillo in Support of a Search Warrant for 2235 Haviland Avenue, dated Mar. 9, 2011 ("Haviland Aff.") ¶ 5.) Various witnesses substantiated that Meregildo participated in the homicide of Carrel Ogarro, sold crack-cocaine in the summer of 2010, and continued to operate a drug distribution business in the Melrose-Jackson area of the Bronx. (See Haviland Aff. ¶¶ 9-10.) After an *in camera* review of the unredacted affidavit in support of the Haviland Warrant, this Court is satisfied that each witness's basis of knowledge is sufficiently reliable.

Moreover, a cooperator—through a series of statements against penal interests—demonstrated Meregildo's participation in several bank robberies. (See Haviland Aff. ¶ 12.) That cooperator also detailed Meregildo's firearm possession inside of 2235 Haviland Avenue on February 16, 2011—only three weeks prior to the issuance of the warrant. (See Haviland Aff. ¶ 12.) Finally, the Government established that Meregildo is a convicted felon—making his alleged firearm possession a federal crime in violation of 18 U.S.C. § 922(g). (See Haviland Aff. ¶ 13.) This confluence of specific, reliable information establishes probable cause and satisfies

this Court that the issuing magistrate judges had a "substantial basis" to conclude probable cause existed. See Gates, 462 U.S. at 238.

2. General Search

Meregildo's argument that the search warrant authorized a "general search" of the premises also fails. For a search warrant to be valid, it must describe the sought-after items with sufficient specificity to allow "the rational exercise of judgment in selecting what items to seize" and may not authorize a "roving commission" engaging in a general rummaging in a person's belongings. United States v. Vargas, 621 F.2d 54, 56 (2d Cir. 1980); see Andresen v. Maryland, 427 U.S. 463, 480 (1976).

Here, Meregildo's protestation that the Haviland Warrant authorized a general search is belied by the warrant itself—which sets forth in specific detail the items sought by law enforcement. The Haviland Warrant authorized seizure of the following items:

> Weapons, ammunition, monies, financial records, papers related to narcotics trafficking or other criminal activity, photographs, clothing, narcotics paraphernalia or packaging materials, telephone and address books, cellular telephones, identification documents, combination and key-lock safes and other secure storage containers, keys or personal papers evidencing a possessory interest in the PREMISES, and other property, documents and records that constitute evidence of the commission of, or are designed or intended as a means of the violation of, or are contraband or the fruits of, the federal firearms and narcotics laws.

(Haviland Aff., Schedule A.)

The Haviland Warrant particularly describes and limits the search to items evidencing Meregildo's participation in federal firearms and narcotics offenses. And the items recovered included, inter alia, ammunition and documents detailing Meregildo's communications and contacts with members of a narcotics conspiracy, and a document

containing an oath taken by members of the narcotics conspiracy. (Hr'g Tr. dated Aug. 3, 2012 at 46.) Each of these items falls within the terms and limitations of the search warrant.

### 3. Limits on the Scope of the Search

Finally, Meregildo argues that certain seized items including letters from his sister, girlfriend, and niece, and photographs of a baby girl and basketball team, exceeded the scope of the warrant. Seized items that exceed the scope of the warrant may be suppressed and returned to the owner. See Andresen, 427 U.S. at 482 n.11. Suppression of all seized items is warranted when law enforcement officials act in flagrant disregard of the limitations of the search warrant. See United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000). But such a measure is required only when officers engage in a widespread seizure of items exceeding the scope of the warrant and do not act in good faith. Shi Yan Liu, 239 F.3d at 140.

In order to demonstrate that officers conducted a search that greatly exceeded the bounds of the warrant, Meregildo must show that the search "actually resemble[d] a general search." Shi Yan Liu, 239 F.3d at 140 (emphasis omitted). Meregildo points to a "non-inclusive" list of sixteen items to substantiate his claim, but some of these items fall within the scope of the warrant. For instance, at least two of the letters refer to Meregildo as "Killa," his alias as alleged in the indictment. (Meregildo's Mem., Ex. H at 21, 22.) Another letter references "H.B.," the initials of co-defendant Hassan Brito. (Meregildo's Mem., Ex. H at 13.) Thus, it was reasonable for law enforcement agents to seize these items as they may relate to narcotics trafficking, murder, or federal firearms offenses.

Even assuming *arguendo* that the remaining items exceed the scope of the warrant, their seizure does not constitute a flagrant disregard for the restrictions imposed by the

warrant. Rather, at most, it reflects an innocuous seizure of correspondence and photographs that can be returned to their owner. See Andresen, 427 U.S. at 482 n.11 ("In searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized."). While Meregildo asserts that his list of sixteen items is "non-inclusive," this Court declines to rule on a vague and amorphous reservation of rights. In accord with Andresen, the Government and Meregildo's counsel are directed to confer regarding the return of any other seized items that may fall outside the scope of the warrant. The Government is directed to return expeditiously any complained-of items seized during the execution of the Haviland Warrant that it concedes are not evidence of criminal activity within the scope of the warrant. Meregildo's motion to suppress the items recovered pursuant to the Haviland Warrant is denied in all other respects.

II. Bill of Particulars

A bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) is proper to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [him] to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars may be ordered to supplement an indictment that is so general that "it does not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1991), overruled on other grounds as recognized by United States v. Marcus, 628 F.3d 36, 41 (2d Cir. 2010).

Here, Meregildo and Pierce move to compel the Government to produce a bill of particulars for Count Fifteen of the Twelfth Superseding Indictment, namely, a conspiracy to possess and distribute more than 280 grams of crack-cocaine and marijuana in violation of 21 U.S.C. §§ 841(b)(1)(A) and (b)(1)(D), respectively.[4] Specifically, Meregildo requests the particulars of any drug transactions the Government alleges he was involved in, including the dates and locations, other participants, and the nature and quantity of the substances sold. Pierce requests identical particulars for the Government's allegations against him.

The necessity of a bill of particulars depends on the nature of the charged crime. When charging conspiracy, the Government is not required to set out precisely each and every act committed by the conspirators in furtherance of the conspiracy. See United States v. Cohen, 518 F.2d 727, 733 (2d Cir. 1975). Accordingly, a bill of particulars is not properly ordered to advise a defendant of the "whens," "wheres," and "with whoms" of the charged conspiracy. See United States v. Muyet, 945 F. Supp. 586, 599 (S.D.N.Y. 1996); see also Torres, 901 F.2d at 233-34 (affirming denial of request for bill of particulars seeking the date defendant joined the conspiracy, the identities of the co-conspirators, and information relating to overt acts of the conspiracy.) Because Meregildo and Pierce's motion seeks this prohibited information, it is denied.

Moreover, a bill of particulars is not necessary "where the government has made sufficient disclosures concerning its evidence and witnesses by other means." United States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999). The Government has previously provided all Rule 16

---

[4] Meregildo and Pierce are also charged in Count One with racketeering in violation of 18 U.S.C. §§ 1961 and 1962(c). The same narcotics conspiracy charged in Count Fifteen is also alleged as Racketeering Act Seven under Count One and this Court's ruling applies with equal weight to that charge.

discovery. And it will provide all Jencks Act material by September 20, 2012, more than ten days prior to trial. This is more than sufficient time to apprise Meregildo and Pierce of the essential facts of Count Fifteen. See United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973) (noting that four days is "more than adequate" to apprise of the essential facts appropriately disclosed in a bill of particulars).

## CONCLUSION

For the foregoing reasons, Defendants Joshua Meregildo's and Earl Pierce's motions to suppress cell site and GPS data seized from their cellular telephones and to compel bills of particulars are denied. In addition, Defendant Meregildo's motion to suppress physical evidence seized from 2235 Haviland Avenue is denied. The Clerk of the Court is directed to terminate the motion pending at ECF No. 124.

Dated:   August 28, 2012
         New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*
Nola B. Heller, Esq.
Adam Fee, Esq.
Santosh S. Aravind, Esq.
United States Attorney SDNY
One Saint Andrew's Plaza
New York, NY 10007
*Counsel for the Government*


Mitchell Dinnerstein, Esq.
350 Broadway, Suite 700
New York, NY 10013
*Counsel for Melvin Colon*

Winston Lee, Esq.
20 Vesey Street, Suite 400
New York, NY 10007
*Counsel for Joshua Meregildo*

Florian Miedel, Esq.
111 Broadway, Suite 1401
New York, NY 10006
*Counsel for Earl Pierce*

Gary G. Becker, Esq.
200 West 57th Street, Suite 900
New York, NY 10019
*Counsel for Nolbert Miranda*