USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1 31 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,                          :

                                                   :        11 Cr. 576 (WHP)

                    -against-                      :        MEMORANDUM & ORDER

                                                   :
JOSHUA MEREGILDO et al.,

                                                   :
                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

WILLIAM H. PAULEY III, District Judge:

          Defendants Melvin Colon, Devin Parsons, and many others were indicted for their

involvement in the "Courtlandt Avenue Crew," a racketeering enterprise in the Bronx.  Parsons

entered into a cooperation agreement with the Government.  Before becoming a cooperating

witness, Parsons was a self-professed gang member, drug dealer, and murderer.  Prior to trial,

Colon moved to compel the Government to produce Parsons's Facebook posts.  Colon argued

that Parsons was a member of the prosecution team and therefore subject to the Government's

Brady obligations.  On October 15, 2012, this Court denied Colon's motion.  This Memorandum

and Order explains the reasons for that decision.

BACKGROUND

          On August 18, 2011, Parsons agreed to cooperate with the Government against

the "Courtlandt Avenue Crew."  On September 21, 2011, members of the "Courtlandt Avenue

Crew" were indicted on various narcotics and racketeering charges for selling marijuana and

"crack" cocaine and murdering rival drug dealers.

          While incarcerated, Parsons had a friend create a Facebook account for him under

the alias "Devin Morris."  Parsons's friend created the account using an e-mail address that

Parsons did not know. Against prison rules, Parsons used a cellular telephone to post Facebook

status updates. Before the Government learned that Parsons had been posting on Facebook,

Bureau of Prisons officials discovered the cellular telephone and seized it. In some posts,

Parsons reflected on his life in jail:

> "everybody wanna live but don't wanna die";
> "Life is crazy thay only miss yu if yu dead or in jail"; and
> "G.o.n.e"

In others, Parsons posted about his cooperation:

> "I'm not tellin on nobody from HARLEM but I can give up some bx niggas that
> got bodys"; and
> "be home sooner then yall hereing lol[.]"

By letter dated July 19, 2012, Toshnelle Foster, another defendant in this case,

advised the Government that he had obtained Parsons's posts from a Facebook account under the

name "Devin Morris." (Letter of Justine A. Harris, Esq., July 19, 2012.) Foster requested

information from the Government concerning Parsons's use of the Facebook account but not its

contents. He wanted to know how Parsons had gained access to a cellular telephone or computer

while in prison. Foster also wanted the Government to confirm that the posts were authored by

Parsons and to disclose any other information the Government possessed concerning the account

or any other Facebook account Parsons had used. Foster attached to his application select posts

that he believed Parsons had authored.

At a proffer session on August 10, 2012, the Government confronted Parsons with

the posts. Parsons confirmed that the Facebook account and posts were his and told the

Government about how the account had been created and how he made the posts. The

Government asked Parsons whether he had made additional posts on the account and he replied

-2-

that he had made no other posts about the case or his cooperation.

Colon then asked this Court to compel the Government to obtain the entire contents of Parsons's Facebook account. On September 28, the Government contacted Parsons to obtain the log-in information for his account. Parsons provided the information but advised the Government that, after the August 10 proffer session, he had asked his friend to delete the account because he wanted to avoid any further inquiries. Parsons also advised the Government that all of the information he provided about the account during the August 10 proffer session was accurate. The Government attempted to access the deleted account using the log-in information Parsons provided but was unsuccessful because neither the Government nor Parsons had access to the account's registered e-mail address. To access the account, the Government contacted Facebook's legal counsel. Facebook, however, informed the Government that it could not access the account without the consent of Parsons's friend.

Colon moved to compel the Government to direct Parsons's friend to provide the log-in information for the Facebook account. After moving to compel, Colon disclosed that he possessed a complete log of Parsons's Facebook account, which Foster's private investigator had acquired.

## DISCUSSION

The Due Process Clause of the Fifth Amendment requires the Government to disclose favorable material-evidence to a criminal defendant. Brady v. Maryland, 373 U.S. 83, 86 (1963); United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004). Evidence is favorable if it is either exculpatory or impeaching. Strickler v. Greene, 527 U.S. 263, 281-82 (1999); United States v. Mahaffy, 693 F.3d 113, 127 (2d Cir. 2012). The Government's obligations under

-3-

Brady encompass not only information that is admissible in its present form but also material

information that could potentially lead to admissible evidence favorable to the defense. United

States v. Rodriguez, 496 F.3d 221, 226 (2d Cir. 2007). "This obligation is designed to serve the

objectives of both fairness and accuracy in criminal prosecutions." Rodriguez, 496 F.3d at 225.

The Brady rule reinforces the distinct legal and ethical obligations of the

Government:

> The United States Attorney is the representative not of an ordinary party to a
> controversy, but of a sovereignty whose obligation to govern impartially is as
> compelling as its obligation to govern at all; and whose interest, therefore, in a
> criminal prosecution is not that it shall win a case, but that justice shall be done.
> As such, he is in a peculiar and very definite sense the servant of the law, the
> twofold aim of which is that guilt shall not escape or innocence suffer. He may
> prosecute with earnestness and vigor—indeed, he should do so. But, while he may
> strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to
> refrain from improper methods calculated to produce a wrongful conviction as it
> is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88 (1935); see also Strickler, 527 U.S. at 281

(discussing how Brady illustrates "special role played by the American prosecutor");

Rodriguez, 496 F.3d at 225-26 (same). These obligations prevent the Government from

exploiting its position to obtain an unfair advantage at trial. Mahaffy, 693 F.3d at 134

("Brady violations obscure a trial's truth-seeking function and, in so doing, place criminal

defendants at an unfair disadvantage. When the Government impermissibly withholds

Brady material, 'its case is much stronger, and the defense case much weaker, than the

full facts would suggest.") (quoting Kyles v. Whitley, 514 U.S. 419, 429 (1995))

(internal alterations omitted).

The focus of the Brady rule is fairness. See Kyles, 514 U.S. at 454; Ritchie, 480

U.S. 39, 60 (1987); Strickler, 527 U.S. at 288; see also Brady, 373 U.S. at 87. The interests that

-4-

it vindicates are more fundamental than those addressed by pretrial discovery rules. While discovery is a pretrial mechanism for defendants to secure information to marshal their defense, Brady and its progeny are concerned with determining whether withheld information was material to the outcome of a trial. The Brady rule is designed to protect defendants' due process rights without disturbing the criminal justice system's fundamentally adversarial nature. United States v. Bagley, 473 U.S. 667, 675 (1985) ("The Brady rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur.") (internal quotations omitted); United States v. Agurs, 427 U.S. 97, 107 (1976) ("We are not considering the scope of discovery . . . . We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution."). "An interpretation of Brady to create a broad, constitutionally required right of discovery would entirely alter the character and balance of our present systems of criminal justice." Bagley, 473 U.S. at 675 n.7. "There is no general constitutional right to discovery in a criminal case, and Brady did not create one . . . 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded[.]'" Weatherford v. Bursey, 429 U.S. 545, 559-60 (1977) (quoting Wardius v. Oregon, 412 U.S. 470, 474 (1973)). In short, Brady is not a rule of discovery—it is a remedial rule. See United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001).

Defendants' due process rights are violated when the Government knows of favorable information and withholds it. Brady, 373 U.S. at 87. To protect a defendant's right to due process, the Government must disclose favorable material-evidence when it is in the Government's knowledge or possession. United States v. Avellino, 136 F.3d 249, 255 (2d Cir.

1998). "The <u>Brady</u> obligation extends only to material evidence [ ] that is known to the prosecutor." <u>Avellino</u>, 136 F.3d at 255. But the "prosecutor is presumed to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to [ ] others acting on the government's behalf in the case, including the police.'" <u>Avellino</u>, 136 F.3d at 255 (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 437-38 (1995)); <u>see also</u> <u>United States v. Payne</u>, 63 F.3d 1200, 1208 (2d Cir. 1995).

    The constructive knowledge of the prosecutor is not limitless. It does not encompass every agency and individual within the federal government. <u>Avellino</u>, 136 F.3d at 255 ("[K]nowledge on the part of persons employed by a different office of the government does not in all instances warrant the imputation of knowledge to the prosecutor[.]"); <u>see also</u> <u>United States v. Morell</u>, 524 F.2d 550, 555 (2d Cir. 1975) (holding that imputation is only proper when an agency can be considered "an arm of the prosecutor" and listing cases). "[T]he imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require [courts] to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." <u>Avellino</u>, 136 F.3d at 255 (internal quotations omitted). Thus, prosecutors cannot be presumed to know about evidence that was outside of their knowledge or beyond their possession. <u>United States v. Hutcher</u>, 622 F.2d 1083, 1088 (2d Cir. 1980) ("We reject . . . a notion of 'possession' which is so elastic as to embrace materials that the prosecution has never had in its files, never inspected, and never knew about."); <u>United States v. Dunn</u>, 851 F.2d 1099, 1101 (8th Cir. 1988) ("It is settled law that the government has no affirmative obligation to discover potentially

exculpatory information which it neither possessed nor of which it was aware.") (citing United States v. Chen, 754 F.2d 817, 824 (9th Cir. 1985)).

Courts disagree about when an individual's knowledge should be imputed to the prosecutor. Compare United States v. Reyeros, 537 F.3d 270, 282 (3d Cir. 2008), with United States v. Brooks, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992).  In determining whether an individual's knowledge should be imputed to the prosecutor, in addition to considering whether an individual is an "arm of the prosecutor" or member of the prosecution team, some courts consider whether the prosecution has the power to obtain the evidence.  Reyeros, 537 F.3d at 282 (considering, among other things, whether the entity charged with constructive possession has ready access to the evidence). But this confuses the power to act with the duty to do so.  United States v. Young, 20 F.3d 758 (7th Cir. 1994) (holding that knowledge of a witness's full criminal history is not imputed simply because the prosecutor could have obtained the criminal records).

In the Second Circuit, a prosecutor's constructive knowledge only extends to those individuals who are "an arm of the prosecutor" or part of the "prosecution team." United States v. Gil, 297 F.3d 93, 106 (2d Cir. 2002); Morell, 524 F.2d 550, 555 (2d Cir. 1975); United States v. Bin Laden, 397 F. Supp. 2d 465, 481 (S.D.N.Y. 2005).  Whether someone is part of the prosecution team depends on the level of interaction between the prosecutor and the agency or individual. See United States v. Locascio, 6 F.3d 924, 949 (2d Cir. 1993) (holding that the reports made by FBI agents in the course of investigations apparently unrelated to the defendants' prosecutions should not be imputed); Pina v Henderson, 752 F.2d 47, 49 (2d Cir. 1985) (holding that a prosecutor's constructive knowledge did not extend to a parole officer who "did not work in conjunction with either the police or the prosecutor" but did extend to a police

-7-

officer who was the investigating officer on the case); Morell, 524 F.2d 550, 555 (2d Cir. 1975);

Bin Laden, 397 F. Supp. 2d at 481. Thus, investigating case agents are part of the prosecution

team but agents of a separate organization or sovereign who are uninvolved in the investigation

are not. Bin Laden, 397 F. Supp. 2d at 481.

There is no clear test to determine when an individual is a member of the

prosecution team. See United States v. Zagari, 111 F.3d 307, 320 n. 13 (2d Cir. 1997) ("The

extent to which knowledge may be imputed from one federal investigative agency to another for

Brady purposes is as yet unclear."); Bin Laden, 397 F. Supp. 2d at 484 (noting that the Second

Circuit is "lacking a clearly articulated imputation test"); Bell v. Coughlin, 820 F. Supp. 780, 789

(S.D.N.Y. 1993) ("It is unclear what the Second Circuit's position is on this issue."); Chandras v.

McGinnis, No. 01 Civ. 2519(LBS), 2002 WL 31946711, at *7 (E.D.N.Y. Nov. 13, 2002) ("[T]he

exact point at which government agents can fairly be categorized as acting on behalf of the

prosecution . . . is uncertain.").

A prosecution team may have many members with different responsibilities. At

its core, members of the team perform investigative duties and make strategic decisions about the

prosecution of the case. See, e.g., Kyles, 514 U.S. at 438 (police investigator); Giglio, 405 U.S.

at 154 (fellow prosecutor). The prosecution team may also include individuals who are not

strategic decision-makers. See, e.g., Bin Laden, 397 F. Supp. 2d at 481 (finding that agents of

the United States Marshals Service's Witness Security Program were members of the

prosecution team because, at the prosecutors' request, the agents installed and continuously

operated video-teleconference equipment "in order to further the Government's investigation").

Those may include testifying police officers and federal agents who submit to the direction of the

prosecutor and aid in the Government's investigation. Pina, 752 F.2d at 47; Bin Laden, 397 F.

Supp. 2d at 481. But the prosecution team does not include federal agents, prosecutors, or parole

officers who are not involved in the investigation. Locascio, 6 F.3d at 949; Quinn, 445 F.2d at

944; Pina, 752 F.2d at 47. And, even when agents are involved in the investigation, they are not

always so integral to the prosecution team that imputation is proper. See United States v.

Stewart, 323 F. Supp. 2d 606, 616-18 (S.D.N.Y. 2004) (declining to impute knowledge of a

forensic expert from the Secret Service lab who provided trial support for the prosecution and

testified as an expert); see also, e.g., United States v. Persico, No. 84 Cr. 809 (JFK), 1993 WL

385799, at *6 (S.D.N.Y. Sept. 29, 1993) (declining to impute a case agent's knowledge of a

Government witness's illegal actions).

   Interacting with the prosecution team, without more, does not make someone a

team member. Stewart, 323 F. Supp. 2d at 616-18. Instead, under the totality of the

circumstances, the more involved individuals are with the prosecutor, the more likely they are

team members. Stewart, 323 F. Supp. 2d at 616-18. Among many others, these circumstances

include whether the individual actively investigates the case, acts under the direction of the

prosecutor, or aids the prosecution in crafting trial strategy. See, e.g., United States v. Diaz, 176

F.3d 52, 106-07 (2d Cir. 1999). In some cases, when an individual is significantly involved with

the prosecution, the presence of a single factor may warrant imputation. Cf. United States v.

Stein, 488 F. Supp. 2d 350, 364 (S.D.N.Y. 2007) (holding that materials in corporation's files are

within government's "control" for Rule 16 purposes because of cooperation agreement). In other

cases, when an individual's involvement is minor, even the presence of many factors will not

warrant imputation. See, e.g., Stewart, 323 F. Supp. 2d at 616-18. Ultimately, no single factor is the touchstone for imputation. Bin Laden, 397 F. Supp. 2d at 481.

Other courts have considered whether cooperating witnesses are members of the prosecution team and concluded that they are not. In United States v. Graham, a witness who was cooperating with the Government pursuant to a plea agreement failed to disclose fifteen boxes of records that he possessed. 484 F.3d 413, 417 (6th Cir. 2006). The Sixth Circuit held that the Government did not suppress these records because they were never in the Government's possession. Graham, 484 F.3d at 417. The Sixth Circuit noted that the Government had "no affirmative duty" to retrieve the files because they constituted "information which [the Government] does not possess." Graham, 484 F.3d at 417. The Sixth Circuit also held that the witness's knowledge could not be imputed to the prosecutor. Unlike other agents that could be considered part of the prosecution team, "cooperating witnesses [ ] stand in a very different position." Graham, 484 F.3d at 417. The Sixth Circuit reasoned that imputing an agent's knowledge to the prosecutor was proper because prosecutors had the means to ensure that agents complied with the Government's Brady obligations. But, "[t]hat [wa]s not necessarily the case" with cooperating witnesses. Graham, 484 F.3d at 417. While cooperating with the Government, the witness remained "an independent actor" and therefore could not be considered an agent of the Government.[1] Graham, 484 F.3d at 417; see also, e.g., United States v. Lujan, 530 F. Supp. 2d 1224, 1231 (D.N.M. 2008) ("[T]here is no affirmative duty to discover information in possession of independent, cooperating witness[es.]"); Wayne Lafave et al., Criminal Procedure, § 20.3(a) (3d ed. 2011) ("Courts generally agree [ ] that the prosecutor's obligations do not extend to agencies that are not law enforcement agencies, even though they may furnish some information to the prosecution. The same is true of private parties.").

---

[1] Nevertheless, the Sixth Circuit left open the question of whether a cooperating witness could ever be so aligned with the prosecution as to require imputation. Graham, 484 F.3d at 417.

In analogous contexts, courts in the Southern District of New York have refused to apply a broad standard of constructive knowledge under Brady. In United States v. Stewart, an expert witness—who monitored defense experts' work, helped prosecutors anticipate likely defenses to forensic evidence, and testified at trial—was not a member of the prosecution team. 323 F. Supp. 2d at 616-18. Similarly, in Persico, the court found that it was not proper to impute the knowledge of either a case agent or a cooperating witness to the prosecution. Persico, 1993 WL 385799, at *6. In that case, Carmine Persico was convicted on racketeering charges and moved for a new trial after discovering that a cooperating witness had been running an illegal drug trafficking scheme with two of the DEA agents who had investigated the case. Persico, 1993 WL 385799, at *1. Persico did not argue that the cooperator was a member of the prosecution team but instead argued that the case agents' knowledge of the cooperator's scheme should be imputed to the prosecutor. The court rejected this argument and noted that it would be "nonsensical" to impute to the prosecutor the criminal actions of agents that were performed outside of the agent's official capacity. Persico, 1993 WL 385799, at *6.

Other courts, in different contexts, have held that the prosecution is responsible for information known by cooperating witnesses. In Stein, the district judge required the Government, under Rule 16, to produce documents that were in possession of a third party. Rule 16 provides that "the Government, upon request, must permit a defendant to inspect and copy an item material to the preparation of the defense 'if the item is within the government's possession, custody or control.'" Stein, 488 F. Supp. 2d at 360 (citing Fed. R. Crim. P. 16(a)(1)(E)). In Stein, the court found that the Government was in control of documents in the possession of a third party because the third party had signed a deferred prosecution agreement, conferring on

the Government the unqualified right to demand the production of any documents from the third party. Stein, 488 F. Supp. 2d at 360. The court also found that Rule 16 encompassed far more than physical control or possession. Stein, 488 F. Supp. 2d at 361. To reach this conclusion, the court imported civil discovery principles into a criminal case. See Stein, 488 F. Supp. 2d at 361-62. But the Federal Rules of Civil Procedure do not establish the boundaries of the Government's due process obligations under Brady. And imposing their generous reach on the Government as a constitutional mandate is a bridge too far. Because of this, Stein does not address the Government's Brady obligations.

The Government's discovery obligations and Brady obligations are not coterminous. See Patterson v. New York, 432 U.S. 197, 210 (1977) ("Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch."); United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) ("Unlike Rule 16 and the Jencks Act, however, Brady 'is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation' and is not violated unless the Government's nondisclosure infringes upon a defendant's right to a fair trial.") (quoting United States v. Starusko, 729 F.2d 256, 262 (3rd Cir. 1984)). Rule 16 protects against trial by surprise. Lamborn v. Dittmer, 873 F.2d 522, 527 (2d Cir. 1989) ("Rule 16 . . . was intended to [e]nsure the efficient resolution of cases and, most importantly, minimize prejudicial surprise."). Brady ensures that the Government will not secure an unfair advantage at trial. Mahaffy, 693 F.3d at 134. Thus, Rule 16 and Brady vindicate separate interests. And the interests that Brady serves would not be furthered by importing civil discovery concepts into the due process analysis.

-12-

At bottom, imputation involves a question of agency law: should a prosecutor be held responsible for someone else's actions? See Giglio, 405 U.S. at 154 (citing Restatement (Second) of Agency § 272). An agency relationship is limited in scope and defined by control. Restatement (Second) of Agency § 14 ("A principal has the right to control the conduct of the agent with respect to matters entrusted to him."). And an agent's duties are limited by the scope of the agency relationship. Restatement (Second) of Agency § 14. Generally, a principal is responsible for the knowledge of an agent when that agent has a "duty to give the principal information" or when the agent acts on his knowledge regarding a matter that is "within his power to bind the principal." Restatement (Second) of Agency § 272. An agent's duty to disclose is thus linked to his power to bind the principal.

Because a prosecutor exercises greater control over federal agents than cooperating witnesses, the agency relationship between a federal agent and a prosecutor is strong. By contrast, the scope of the agency relationship between a cooperating witness and a prosecutor is narrower and warrants imputation in fewer circumstances. This comports with sound policy and common sense. It does not require an analysis of agency law to determine that a police officer or federal agent is in a better position than a cooperating witness to bind the federal government.

Applying the Second Circuit's imputation analysis to cooperating witnesses suggests that, in most cases, cooperating witnesses should not be considered part of the prosecution team. For federal agents, the Second Circuit does not have an all-inclusive theory of imputation. Instead, it recognizes that a broad theory of imputation would paralyze the prosecution of criminal cases. Avellino, 136 F.3d at 255 ("[T]he imposition of an unlimited duty

-13-

on a prosecutor to inquire . . . would "condemn the prosecution of criminal cases to a state of paralysis.") (citing United States v. Gambino, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)); Shakur v. United States, 32 F. Supp. 2d 651, 665 (S.D.N.Y. 1999). This applies with greater force to cooperating witnesses. In Kyles, the Supreme Court noted that "no one doubts that police investigators sometimes fail to inform a prosecutor of all they know. But neither is there any serious doubt that procedures and regulations can be established to carry the prosecutor's burden and to [e]nsure communication of all relevant information on each case to every lawyer who deals with it." Kyles, 514 U.S. at 438 (internal quotations and alterations omitted). The Court reasoned that it was proper to extend the prosecutor's Brady obligations to police investigators because the prosecutor "had the means to discharge the government's Brady responsibility" by creating procedures and regulations to ensure police compliance. Kyles, 514 U.S. at 438. But while such measures may ensure the compliance of federal agents, they are less likely to be effective against cooperating witnesses. Federal agencies have standard policies and educational programs to ensure that their personnel comply with the Government's obligations. A cooperating witness does not.

When the Government uses an informant as a government agent and directs him to gather information, a court may hold the Government responsible for his actions. United States v. Birbal, 113 F.3d 342, 346 (2d Cir. 1997). But in most cases witnesses and agents perform separate functions. Agents investigate. Witnesses relate information they observe. Prosecutors do not direct witnesses to investigate, and witnesses do not advise prosecutors on trial strategy. As such, cooperating witnesses are rarely members of the prosecution team.

While police and prosecutors are engaged in the same enterprise, cooperating witnesses are not. And it is unreasonable to expect the same solicitude and sacrifice from cooperators. The substantial responsibility born by federal agents under <u>Brady</u> stems in part from their commitment to the Constitution. Federal agents and prosecutors serve the law. <u>Berger</u>, 295 U.S. at 88. They swear to "support and defend the Constitution of the United States" and "bear true faith and allegiance to the same." 5 U.S.C. § 3331. And they share the same cause: "that guilt shall not escape or innocence suffer." <u>Berger</u>, 295 U.S. at 88. But cooperating witnesses, in most cases, have not served the law but violated it. They are not concerned with the escape of guilt or suffering of innocents. Their cause is their own.

Here, Parsons was not a member of the prosecution team or an arm of the prosecutor. He never participated in formulating trial strategy nor was he directed to investigate. He served as a witness after signing a plea agreement that required him to "truthfully and completely disclose all information with respect to the activities of himself and others concerning all matters about which this Office inquires of him." (Cooperation Agreement, Government Exhibit 3530-U at 3-4.) Colon suggests that, because of Parsons's testimony and the plea agreement, the Government should be required to find Parsons's Facebook information, which is now in the exclusive possession of a third party. But <u>Brady</u> imposes no such obligation. The fact that a cooperating witnesses signs a plea agreement and testifies at trial does not transform him from a criminal into a member of the prosecution team. <u>See</u> <u>Graham</u>, 484 F.3d at 417.

In the Sixth Amendment context, the Second Circuit has held that "an informant becomes a government agent . . . only when the informant has been instructed by the police to

-15-

get information[.]" <u>Birbal</u>, 113 F.3d at 346. The Fifth and Sixth Amendments require separate

analyses but the underlying question of whether the Government should be held responsible for

the actions of an informant is the same. The Government never instructed Parsons to make the

Facebook posts and instead asked Parsons to surrender all the information he had. Under the

totality of the circumstances, Parsons was neither a member of the prosecution team nor an arm

of the prosecutor. Because the prosecutors provided Colon with the information that was in their

possession, the Government discharged its obligations under <u>Brady</u>.

      Colon also argues that, even if information was never in the Government's

possession, the Government has a duty to go out and find it. The Government cannot avoid its

<u>Brady</u> obligations by being willfully blind to the information in front of it. <u>United States v.

Quinn</u>, 537 F. Supp. 2d 99, (D.C. Cir. 2008); <u>United States v. Brooks</u>, 966 F.2d 1500, 1502-03

(D.C. Cir. 1992); <u>United States v. Osorio</u>, 929 F.2d 753, 761 (1st Cir. 1991). But the

Government is not responsible for information that is not in its possession. <u>United States v.

Hutcher</u>, 622 F.2d 1083, 1088 (2d Cir. 1980) ("Clearly the government cannot be required to

produce that which it does not control and it never possessed or inspected[.]"). "<u>Brady</u> . . . does

not require the government to act as a private investigator and valet for the defendant, gathering

evidence and delivering it to opposing counsel." <u>United States v. Tadros</u>, 310 F.3d 999, 1005

(7th Cir. 2002).

      Finally, while <u>Brady</u> is a remedial rule, there is no remedy for a defendant who

possesses or has access to the information he claims was withheld. <u>United States v. Paulino</u>, 445

F.3d 211, 225 (2d Cir. 2006); <u>United States v. Jackson</u>, 345 F.3d 59, 73 (2d Cir. 2003); <u>United

States v. Duran-Peralta</u>, No. 88 Cr. 523 (CSH), 1989 WL 105789, at *5 (S.D.N.Y. Sept. 6,

1989).  While the Government only possessed select portions of Parsons's Facebook account that were given to them by Foster's counsel, Colon possessed a full copy, which he only disclosed after moving to compel.  Armed with a full copy of the Facebook account, Colon had "ample ammunition" to attack Parsons's credibility and nothing in the record suggests that Parsons's other posts would undermine his credibility.  <u>United States v. Orena</u>, 145 F.3d 551, 559 (2d Cir. 1998).  Because the Government never possessed Parsons's Facebook account, it had no obligation to acquire it.

CONCLUSION

For the foregoing reasons, Defendant Melvin Colon's motion to compel the Government to produce Devin Parsons's Facebook posts is denied.

Dated:      January 31, 2013
            New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of record:*

Nola B. Heller, Esq.
Adam Fee, Esq.
Santosh S. Aravind, Esq.
United States Attorney SDNY
One Saint Andrew's Plaza
New York, NY 10007
*Counsel for the Government*

Mitchell Dinnerstein, Esq.
350 Broadway, Suite 700
New York, NY 10013
*Counsel for Melvin Colon*

Winston Lee, Esq.
20 Vesey Street, Suite 400
New York, NY 10007
*Counsel for Joshua Meregildo*

Florian Miedel, Esq.
111 Broadway, Suite 1401
New York, NY 10006
*Counsel for Earl Pierce*

Gary G. Becker, Esq.
200 West 57th Street, Suite 900
New York, NY 10019
*Counsel for Nolbert Miranda*